1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Imran Ahmad Jamali, a single man,          No. CV-13-00613-PHX-DGC

10                       Plaintiff,             **ORDER**

11   v.

12   Maricopa County, et al.,

13                       Defendants.

14          Before the Court are the motion to dismiss filed by Defendant Kyle Ritter

15   (Doc. 99), the motion to dismiss filed by Defendant Sahar Sarid (Doc. 100), the motion to

16   join Kyle Ritter's motion to dismiss filed by Defendant Sahar Sarid (Doc. 101), the

17   motion to dismiss filed by Defendant Maricopa County ("the County") (Doc. 102), the

18   motion to join Defendant Kyle Ritter and the County's motions to dismiss filed by

19   Defendants James Richmond and Richmond Consulting Group, LLC (Doc. 103), the

20   motion to join the County's motion to dismiss filed by Defendant Sahar Sarid (Doc. 104),

21   the motion to join in the County's motion to dismiss filed by Defendant Kyle Ritter

22   (Doc. 105), the motion to dismiss filed by Defendant Stafford Shealy (Doc. 106), the

23   motion to join Defendant Sahar Sarid's motion to dismiss filed by Stafford Shealy

24   (Doc. 107), the motion to join Defendant Kyle Ritter's motion to dismiss filed by

25   Defendant Stafford Shealy (Doc. 108), the motion for default against Defendants Cornetti

26   and Wiggan filed by Plaintiff Imran Ahmad Jamali (Doc. 113), the motion to set aside

27   entry of default filed by Defendant Spotlight Media Group, LLC (Doc. 120), and the

28   motion to dismiss and join in pending motions to dismiss filed by Defendant Spotlight

1    Media Group, LLC (Doc. 121).  For the reasons set forth below, the Court will dismiss

2    the complaint for lack of subject matter jurisdiction.[1]

3    **I.    Background Facts.**

4         In his First Amended Complaint (Doc. 89 at 11), Plaintiff Imran Ahmad Jamali

5    alleges that the FBI sought to prevent him from working as an airline pilot as part of an

6    investigation.  He claims the FBI directed the TSA and FAA to declare Plaintiff a

7    terrorist.  Later, when the FBI's investigation against Plaintiff had faltered, he alleges the

8    FBI conspired with Maricopa County to frame him.  Plaintiff alleges that framing him

9    would accomplish the FBI's wrongful ends because he could not return to work for the

10   airline that employed him once he was criminally charged.  Plaintiff claims he was

11   arrested as part of an FBI ruse on October 4, 2010, for supposedly stalking the friends

12   and family of a U.S. State Department spy named Amy Hyatt.  Plaintiff claims that he

13   never knew any of the people he was falsely accused of stalking.  After being criminally

14   charged for stalking, the FBI abandoned its terrorism accusations against Plaintiff.

15   According to Plaintiff, he lost his job because of being wrongfully charged.

16        Plaintiff alleges that Maricopa County employees "coerced, threatened and

17   forcefully took the Plaintiff's personal property" – specifically, his image, name, and

18   fingerprints – without his consent during his arrests.  Doc. 89 ¶ 69.  He claims Maricopa

19   County posted his image, name, arrest information, and other personal details on their

20   website: mcso.org/mugshot.  Then, to Plaintiff's chagrin, a host of other parties – many

21   of whom are named as defendants in this action – appropriated Plaintiff's image and used

22   it on their own private sites maintained to display mug shots.  Many of these websites,

23   including the County's, permitted site browsers to vote on a "mugshot of the day," and

24   some even permitted viewers to make comments about images posted on the sites.  Some

25   of the comments were abusive and derogatory in nature.  Other parties named as

26   defendants used Plaintiff's image in printed publications.  The crux of Plaintiff's

27

28        [1] The requests for oral argument are denied because the issues have been fully
     briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
     *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

complaint is that he enjoys a property interest in his image and other identifying information under the Constitution and a UCC1 filing with the International Association of Commercial Administrators**,** and that this property interest was violated by the County and other Defendants who appropriated his property from the County's website.

Plaintiff initially filed a complaint on March 26, 2013, which the Court dismissed for lack of subject-matter jurisdiction.  Doc. 47.  Plaintiff now seeks relief in his amended complaint (Doc. 89) under a multitude of legal theories, including claims that arise under state law and the Constitution: (1) trespass to chattel; (2) conversion; (3) unjust enrichment; (4) civil conspiracy; (5) the Fourth Amendment right to be free from unreasonable seizures; (6) the Fifth Amendment right to private property; (7) the Eighth Amendment right to be free from cruel and unusual punishment; (8) an alleged Ninth Amendment right to privacy and publicity; (9) an alleged Ninth Amendment right to life, liberty and happiness; (10) intentional infliction of emotional distress; (11) gross negligence; and (12) defamation.  Plaintiff seeks compensatory, consequential, and punitive damages.  He also seeks both temporary and permanent injunctions against Defendants' use of images, names, and other personal information taken pursuant to his arrest.

The County moves to dismiss the complaint for lack of subject matter jurisdiction. Doc. 102.  It argues that Plaintiff's complaint should be dismissed for three reasons: (1) Plaintiff has no basis in law to maintain any claims under the Fourth, Fifth, Eighth, or Ninth Amendments; (2) Plaintiff's state law claims are based on the same faulty understanding of the Constitution; and (3) Plaintiff has failed to comply with the notice of claim statute and statute of limitations.  Doc. 102 at 1-2.

**II.    Dismissal of Federal Claims.**

Even if Plaintiff is correct that the County's seizure of his image and personal information implicate the Fourth Amendment, "[t]o say that the Fourth Amendment applies here is the beginning point, not the end of the analysis." *Maryland v. King*, 133 S. Ct. 1958, 1969 (2013).  "As the text of the Fourth Amendment indicates, the ultimate

1    measure of the constitutionality of a governmental search [or seizure] is

2    'reasonableness.'"  *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).  In

3    some circumstances, such as "[w]hen faced with special law enforcement needs,

4    diminished expectations of privacy, minimal intrusions, or the like, the Court has found

5    that certain general, or individual, circumstances may render a warrantless search or

6    seizure reasonable."  *Illinois v. McArthur*, 531 U.S. 325, 330 (2001).  "Those

7    circumstances diminish the need for a warrant . . . because an individual is already on

8    notice . . . that some reasonable police intrusion on his privacy is to be expected."  *King*,

9    133 S. Ct. at 1969.

10         The County's seizure and publication of Plaintiff's image and personal

11    information did not violate his Fourth Amendment rights.  In *King*, the Supreme Court

12    held that taking a DNA sample of an arrestee did not violate his constitutional rights.  133

13    S. Ct. at 1980.  The Court explained that taking pictures, fingerprints, and physical

14    measurements, recording the location of scars and body markings, and obtaining other

15    relevant identifying information from an arrestee is reasonable under the Fourth

16    Amendment for "the safe-keeping of a prisoner, and to prevent his escape, or to enable

17    [law enforcement] the more readily to retake the prisoner if he should escape."  *Id.* at

18    1975 (quoting *State ex rel. Bruns v. Clausmier*, 57 N.E. 541, 542 (Ind. 1900)).  Plaintiff's

19    Fourth Amendment rights were not violated by similar actions in this case.

20         Nor did the County violate Plaintiff's Fifth Amendment rights.  Plaintiff does not

21    have a property interest in his likeness and personal information that would prevent the

22    County from taking his picture and obtaining personal information incident to his arrest.

23    Use of information seized incident to arrest should "not be unduly restricted upon any

24    fanciful theory of constitutional privilege."  *King*, 133 S. Ct. at 1975 (citing *Shaffer v.

25    United States*, 24 App.D.C. 417, 426 (1904)).

26         The County did not violate Plaintiff's Eighth Amendment rights.  Plaintiff asserts

27    that he was subjected to cruel and unusual punishment when his image was placed on the

28    Maricopa County Sheriff's Office website.  Plaintiff does not assert, however, that he was

subjected to any physical or psychological force by Maricopa County agents.  Although some may regard Maricopa County's practice of holding a "mugshot of the day" contest to be tasteless and inappropriate, it is not cruel and unusual punishment under the Eighth Amendment.  The Eighth Amendment requires that pretrial detainees and other prisoners be afforded "the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Plaintiff cites no authority to suggest that protection of one's arrest photo constitutes such a minimal requirement.  Indeed, the Supreme Court has held that information relating to a person's arrest may be publicized without violating his constitutional rights.  *Paul v. Davis*, 424 U.S. 693, 713 (1976).

Plaintiff's Ninth Amendment claim also lacks merit.  The Ninth Amendment has not traditionally been considered a source of substantive rights.  *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 96 (1947); *see* Laurence H. Tribe, <u>American Constitutional Law</u>, 776 n. 14 (2d ed. 1998) ("It is a common error, but an error nonetheless, to talk of 'ninth amendment rights.'  The ninth amendment is not a source of rights as such; it is simply a rule about how to read the Constitution.").  Plaintiff cites no authority in support of his Ninth Amendment claim.

In his response to the motions, Plaintiff asserts for the first time that his federal claims are not based on a conventional understanding of the Fourth, Fifth, Eighth, and Ninth Amendments.  Doc. 166 at 7.  Plaintiff argues instead that Defendants violated his constitutional rights by engaging in interstate commerce with his personal property and by putting that personal property to commercial use on their respective websites.  *Id.*  Plaintiff seems to be claiming that Defendants have committed some sort of commercial constitutional tort, but Plaintiff cites no authority for his assertion that the Bill of Rights or any other constitutional provision prevents Defendants from using his image and other personal information for commercial purposes.   Because Supreme Court and Ninth Circuit precedents hold that Defendants did not violate any of Plaintiff's constitutional rights when they took and published his image and personal information incident to his arrest, the Court finds no basis for Plaintiff's assertion that Defendants violated his

constitutional rights by putting public information about his arrest to commercial use.

In summary, the actions of Defendants have not violated the United States Constitution.  The Court will apply this clear holding to all of Plaintiff's federal claims and all Defendants.

**III.    Dismissal of State Claims.**

With Plaintiff's federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The relevant statute provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (district court has discretion to keep, or decline to keep, state law claims under conditions set forth in § 1367(c)).  The Court will dismiss Plaintiff's state-law claims.

**IV.    Leave to Amend.**

"The court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see* 28 U.S.C. § 1653 (authorizing amendment of pleadings to cure defective jurisdictional statement).  In the Ninth Circuit, "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)); *see also Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996) ("As a general matter, this court has long sought to ensure that pro se litigants do not unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy.").

The Court will dismiss the complaint without leave to amend.  The gravamen of Plaintiff's complaint – that Defendants wrongfully appropriate his image and personal identifying information – simply does not give rise to a federal constitutional violation or any other federal claim.  Plaintiff has effectively had three opportunities to identify a

federal claim:  in his original complaint, in his amended complaint, and in his response to the motions to dismiss, where he sought to craft a federal commercial claim of some kind.  The Court is satisfied that Plaintiff cannot plead a federal claim and that further amendments would be futile.  The Court accordingly will not grant him leave to amend.

**IT IS ORDERED:**

1.      Plaintiff's first amended complaint (Doc. 89) is **dismissed** for lack of subject matter jurisdiction.  Leave to amend is denied.

2.      As Plaintiff has voluntarily dismissed his complaint as to Defendant Spotlight Media Group, LLC (Doc. 127), its motion to set aside default (Doc. 120) is **denied** as moot.

3.      Plaintiff's motion to enter default (Doc. 113) is **denied**.

4.      The Court **grants** the motions to join (Docs. 101, 103, 104, 105, 107, 108, 121).

5.      The Clerk of Court shall **terminate** this action.

Dated this 18th day of October, 2013.

David G. Campbell
United States District Judge